AO 91 (Rev. 11/11)  Criminal Complaint

Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED

APR 1 5 2019

David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Maksym Nienadov and Volodymyr Nikolaienko | ) ) ) ) ) | Case No. H19-0649M |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 2018, through January 2019__ in the county of __United States__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 2320(a)(1) and 2320(a)(2) | Trafficking in Counterfeit Goods |
| Title 21, United States Code, Sections 331(a) and 333(a)(2) | Misbranded Drugs |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

John G. Valdez, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/15/2019

_____
Judge's signature

City and state: Houston, Texas

Peter Bray, Magistrate Judge
*Printed name and title*

SEALED

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, John G. Valdez, after being duly sworn, do hereby depose and state:

1. I have been a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) since May 2001. I am currently assigned to the Intellectual Property Theft Group in Houston, Texas. I am empowered by the DHS, ICE as a Special Agent to conduct searches and seizures and affect arrests for violations of Titles 8, 18, 19, and 21 of the United States Code. I am a graduate of the Federal Law Enforcement Training Center (FLETC). At FLETC, I received training in criminal investigative techniques, including financial investigations, executing search warrants, and other law enforcement subjects. I have also received both formal and on-the-job training in the laws and regulations relating to trafficking in counterfeit goods, money laundering, mail and wire fraud, counterfeit financial instruments, bulk cash smuggling, intellectual property violations, and other financial crimes. I have directed, and participated in, numerous investigations involving these crimes, and assisted in obtaining and executing search warrants, including electronic evidence search warrants targeting commercial fraud and intellectual property offenses. I have also participated in several investigations involving the use of electronic mail and social media to coordinate illicit activities. I regularly communicate with investigators with expertise in computer forensics, digital evidence, and internet investigations.

### Persons to be arrested

2. I make this affidavit in support of a criminal complaint and arrest warrants for the following individuals:

    **Maksym NIENADOV**
    **&**
    **Volodymyr NIKOLAIENKO**

### Probable Cause

3. The information enumerated in the paragraphs below, furnished in support of a criminal complaint for NIENADOV and NIKOLAIENKO, is based upon information of my own personal knowledge, observations and or facts related to me by other agents of ICE and or other law enforcement personnel involved in this investigation and representatives of the trademark holders Merck & Co. (Merck), Celgene Corporation (Celgene) and Gilead Sciences, Inc. (Gilead). Because this affidavit is being submitted for the limited purpose of establishing probable cause for arrest warrants, the affidavit may not contain every fact known to me during the course of this investigation.

4. ICE is charged with protecting the welfare of the American public by ensuring, among

1

other things, that all goods entering and exiting the United States are lawful and accurately described.

5. The United States Food and Drug Administration ("FDA") is charged with protecting the health and safety of the American public by ensuring, among other things, that drugs sold for administration to humans bear labels containing true and accurate information. The FDA's responsibilities include regulating the distribution and labeling of prescription drugs shipped or received in interstate commerce.

6. Under the Food, Drug and Cosmetic Act, the definition of a "drug" includes articles which (1) are intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man, and (2) are intended to affect the structure or function of the body of man. Due to the toxicity and other potential harmful effects, certain drugs are not considered safe for use except under the supervision of a practitioner licensed by law to administer such drugs. These drugs are known as prescription drugs.

7. The Food, Drug and Cosmetic Act also regulates the importation, delivery, distribution and receipt of prescription drugs in interstate commerce. Under the Act, a prescription drug is deemed misbranded if its labeling is false and misleading in any particular manner. Under the Act, a drug must bear labeling to provide information for its safe use. If a drug is dispensed without a prescription, it is also deemed to be misbranded under the Act.

8. Keytruda is a prescription oncology drug that has been approved by the FDA for distribution within the United States. Merck has the exclusive right to manufacture Keytruda for distribution within the United States. Merck owns several trademarks which are registered in the principal registry in the United States Patent and Trademark Office. Merck owns U.S. Trademark Registration Numbers 4,263,031, for the word mark KEYTRUDA, 2,169,031, for the word mark MERCK and 922,205 for the letters MSD.

9. Abraxane is a prescription oncology drug that has been approved by the FDA for distribution within the United States. Celgene has the exclusive right to manufacture Abraxane for distribution within the United States. Celgene owns several trademarks which are registered in the principal registry in the United States Patent and Trademark Office. Celgene owns U.S. Trademark Registration Numbers 2,990,396 for the word mark ABRAXANE, and 3,007,995 for the design ABRAXANE.

10. Epclusa is a prescription hepatitis drug that has been approved by the FDA for distribution within the United States. Gilead has the exclusive right to manufacture Epclusa for distribution within the United States. Gilead owns several trademarks which are registered in the principal registry in the United States Patent and Trademark Office. Gilead owns U.S. Trademark Registration Numbers 4,911,858 for the word mark EPCLUSA, 4,279,898 for the word mark GILEAD and 4,560,268 for number mark 7916.

2

11. Counterfeit prescription drugs are a danger to the health and safety of the American public, because they are not quality-controlled, do not contain the proper active pharmaceutical ingredients, and may contain harmful fillers and substances.

12. Affiant has learned through investigation that NIENADOV and NIKOLAIENKO are neither medical doctors, pharmacists, licensed wholesalers, nor licensed distributors of pharmaceutical drugs in the United States. They do not have permission from the trademark holders to sell their pharmaceuticals in the United States.

13. In May 2018, your Affiant received credible information from Merck representatives that NIENADOV and NIKOLAIENKO were smuggling counterfeit Keytruda, Abraxane and Epclusa into the United States (as well as other countries) for wholesale distribution. Merck representatives further stated they had conducted three undercover purchases of evidence (POE) of counterfeit Keytruda from NIENADOV and NIKOLANIENKO. Merck representatives stated that their undercover representative contacted NIENADOV and NIKOLAIENKO via WhatsApp (an end-to-end encrypted text messaging app). Merck representatives provided your Affiant with NIENADOV's cellular telephone number.

14. On June 15, 2018, your Affiant acting in an undercover capacity sent a WhatsApp text message to NIENADOV. In the text your Affiant advised NIENADOV that he received his telephone number from an associate in the United States who advised your Affiant that NIENADOV could supply Keytruda in 50 milligram (mg) doses. In the text your Affiant also asked NIENADOV how much he sold the Keytruda for. On the same date NIENADOV responded to the text and advised your Affiant that he sold the Keytruda 50mg for $1,180 (U.S.) a box. Your Affiant responded to the text and asked NIENADOV for the expiration date on the Keytruda. Your Affiant also asked NIENADOV if he could text a picture of the Keytruda to your Affiant. On the same day NIENADOV responded to your Affiant's text and advised him that the expiration date on the Keytruda was June 2020. NIENADOV also provided your Affiant with two photographs of the Keytruda 50mg. Your Affiant responded to the text on the same day and asked NIENADOV for his banking information, so he could wire transfer the money for two boxes of Keytruda 50mg. On the same day NIENADOV provided your Affiant with the bank information to wire transfer the money for the purchase of the Keytruda. In the text message NIENADOV instructed your Affiant to wire the money to his bank account in the Ukraine.

15. On June 19, 2018, an ICE undercover agent (UCA) wire transferred $2,400 to the bank account provided by NIENADOV for the purchase of the Keytruda. On June 20, 2018, NIENADOV sent your Affiant a WhatsApp text message acknowledging that he received the $2,400 and would ship the Keytruda to the address provided to him by your Affiant. On June 27, 2018, your Affiant received a text message from NIENADOV containing the

3

tracking number (EMS EE010365527UA) for the Keytruda order. On July 2, 2018, your Affiant received the shipment containing German branded (Keytruda packaged for distribution in Germany) Keytruda at an ICE undercover warehouse in Houston, Texas. The mail parcel bore EMS tracking number EE010365527UA and contained two boxes of Keytruda 50mg. The EMS waybill stated that the sender was "Maxim Nenadov." On July 3, 2018, your Affiant mailed one box of the Keytruda to Merck for testing. On January 8, 2019, your Affiant received a Merck Forensic Services Laboratory report from a Merck representative stating that the Keytruda packaging and medication received from NIENADOV on July 2, 2018, was counterfeit and violated the trademark registrations listed in paragraph eight of this affidavit.

16. On July 13, 2018, your Affiant sent a text message to NIENADOV. In the text your Affiant asked NIENADOV if he could supply Abraxane 5mg/ml. NIENADOV responded to the text on the same day and stated that he could supply Abraxane. On July 16, 2018, your Affiant sent a text to NIENADOV advising him that text messages were not being received on Affiant's phone and asked NIENADOV if he had an email address that your Affiant could contact him on to place an order (for the Abraxane). On the same day NIENADOV sent a text message to your Affiant asking your Affiant to text NIENADOV his email address. Your Affiant responded to the text message the same day and sent NIENADOV his email address. In a separate text message on July 16, 2018, your Affiant asked NIENADOV to send the total price for one box of Keytruda, two boxes of Abraxane, and bank transfer wiring information. On July 17, 2018, NIENADOV sent an email to your Affiant. In the email NIENADOV provided SA Valdez with an invoice for one box of Keytruda ($1,300) and one box of Abraxane ($400), with the total cost of the order amounting to $1,700.00. The email also provided bank wiring information. Bank wiring information instructed your affiant to wire the money to NIENADOV's bank account in the Ukraine.

17. On July 17, 2018, your Affiant sent an email to NIENADOV and advised him that he needed two boxes of Keytruda and two boxes of Abraxane. On July 18, 2018, your Affiant sent another email to NIENADOV and advised him that he was going to send a wire transfer to him (to the bank NIENADOV provided in the email dated July 17, 2018) for $3,400.00 for the purchase of two boxes of Keytruda and two boxes of Abraxane. On July 18, 2018, NIENADOV responded to the email and confirmed the cost of $3,400.00 for the Keytruda and Abraxane. On July 18, 2018, an ICE UCA wire transferred $3,400 to NIENADOV as instructed for the purchase of the Keytruda (two boxes) and Abraxane (two boxes). On July 18, 2018, your Affiant sent NIENADOV an email and advised him that the wire transfer for $3,400 was sent to him. NIENADOV responded to the email and advised your Affiant that he would mail the order. On July 20, 2018, your Affiant sent an email to NIENADOV and asked him to send the tracking number for the order as soon as possible.

18. On July 21, 2018, NIENADOV sent a text message to your Affiant asking your Affiant if

4

the shipment/order was going to the same address (ICE undercover warehouse) as the last order. On July 21, 2018, NIENADOV sent your Affiant a WhatsApp text message. In the text message NIENADOV provided your Affiant with the tracking number for the order (EE010368086UA) of Keytruda and Abraxane. On July 30, 2018, your Affiant received the shipment containing the Keytruda and Abraxane at the ICE undercover warehouse in Houston, Texas. The mail parcel bore tracking number EE010368086UA and contained two boxes of German branded Keytruda 50mg and two boxes of German branded Abraxane 5mg/ml. The EMS waybill stated that the sender was "Maxim Nenadov, PR Goeoseevskiy 70, Kiev, 59035". On July 30, 2018, one box of the Keytruda was mailed to the trademark holder Merck for analysis and one box of Abraxane was mailed to the trademark holder Celgene for analysis. On October 19, 2018, your Affiant received a laboratory report from a Celgene representative advising your Affiant that the Abraxane purchased from NIENADOV was counterfeit and violated the trademark registrations listed in paragraph nine. On January 9, 2019, your Affiant received a laboratory report from a Merck representative advising your Affiant that the Keytruda purchased from NIENADOV was counterfeit and violated the trademark registrations listed in paragraph eight.

19. On August 14, 2018, your Affiant obtained a search warrant from United States Magistrate Judge Nancy K. Johnson, Southern District of Texas for the search of NIENADOV's Google email account. On August 15, 2018, your Affiant received the requested records from Google and confirmed that the subscriber associated with the email account was "Maxim Nenadov." An analysis of the email account revealed that the email account is being used jointly by NIENADOV and NIKOLAIENKO. There are numerous emails in the account addressed to both NIENADOV and NIKOLAIENKO. Emails revealed that NIENADOV and NIKOLAIENKO are manufacturing and trafficking counterfeit pharmaceuticals. For example, your Affiant found that NIENADOV and NIKOLAIENO are contacting companies that manufacture medical glass bottles/containers asking if they can supply specific types of medical glass containers and vials. NIENADOV and NIKOLAIENKO also contacted a company asking for the price of a machine used to cap and seal penicillin bottles/vials. Keytruda and Abraxane are sold in glass vials like penicillin and can be capped and sealed in the same fashion. They are also contacting printing companies requesting the printing of packaging for the prescription drugs Revlimid and Soliris. NIENADOV and NIKOLAIENKO do not have permission from the trademark holders (Celgene and Alexion respectively) to print/manufacture Revlimid and Soliris. In August 2017, the SOI, working on behalf of the trademark holder Celgene, purchased one box of Revlimid from NIKOLIENKO that was confirmed counterfeit by Celgene. NIKOLAIENKO instructed the SOI to make payment for the Revlimid to NIENADOV's bank account in the Ukraine. Your Affiant identified the bank account that was used for the payment for the Revlimid to be the same bank account NIENADOV instructed your Affiant to make payment to for his orders.

5

20. During your Affiant's review of the email account, your Affiant reviewed an email dated March 2, 2018, from NIENADOV to representatives from a German vial manufacturer which stated, "hi, do you have this vial?" Attached to the email were three photographs, two of a medicine vial and one of a detailed diagram of the vial which included all of the vial's dimensions and physical properties. A review of the manufacturer's email address revealed that it is used by the company Alemania, located in Germany. The company specializes in manufacturing tubular glass for many needs to include pharmaceutical needs. On the same date NIENADOV sent emails of the same photographs to three other companys (Sword Scientific, located in United Kingdom, Agilent Technologies located in Santa Clara, CA, and Rapid Labs located in United Kingdom) asking if they sold the vials in the photographs.

21. During your Affiant's review of the email account, your Affiant reviewed an email dated March 20, 2018, from NIENADOV to another company with two photographs attached of the drug packaging for Revlimid. After review of the email address, your Affiant identified the company as Tera Print located in Kiev, Ukraine. Tera Print specializes in printing of business cards and other printed materials. On April 12, 2018, NIENADOV sent an email to Tera Print which contained nine attachments of photographs of the packaging for the drug Soliris.

22. During your Affiant's review of the email account, your Affiant reviewed an email dated May 10, 2018, from NIENADOV to Hawa Tapa with four photographs attached to the email of an all-white generic pharmaceutical plastic bottle. A review of the email address revealed that email address is used by the company Hawa Tapa located in the Ukraine. The company manufactures plastic products to include medical containers/bottles.

23. On July 12, 2018, NIENADOV sent an email to a company that manufactures bottles which stated "hi. I need vias [sic] 10 ml". Attached to the email was a diagram of a bottle with exact measurements. A review of the email revealed that the is used by Huicheng Bottle, located in Zhejiang, China. Huicheng Bottle specializes in the manufacturing of glass bottles to include glass vials and glass tubs.

24. During your Affiant's review of the email account, your Affiant read an email dated August 7, 2018. NIENADOV sent the email to a Google mail address inquiring about pricing for tools to further his conspiracy. More specifically, in the email NIENADOV asked for the price of a machine used to cap penicillin bottles. On August 8, 2018, an unknown individual responded to the email and advised NIENADOV that a capping machine would cost $4,000.

25. During your Affiant's review of the email account, your affiant read an email dated April 18, 2018, from an individual identified as Umesh SONI to NIENADOV. In the email SONI stated "hello sir check email any detail put invoice." Attached to the email was an invoice for the purchase of Epclusa. The invoice stated the cost for one box of Epclusa

6

was $580.00 and identified the person who sent the invoice was M/s. FOP NENADOV M.A, St Deleovaya 8, Kiev, 03056 Ukraine. The consignee for the shipment was Klever/Aseneth De La Hoya, 9807 Mines Road Suit 17, Laredo, Texas 78045. The Port of Loading on the invoice is Kiev, Ukraine, which indicates that this is where the package left Ukraine. The Port of Discharge on the invoice was U.S.A., which indicates the shipment was destined for the United States at the address listed above in Laredo, Texas. The invoice was dated April 16, 2018.

26. In November and December 2018, a SOI negotiated and placed (at the direction of your Affiant) an undercover purchase of evidence via WhatsApp from NIKOLAIENKO for the purchase of suspected counterfeit Epclusa. The purchase consisted of two boxes of Epclusa 400mg/100mg tablets. NIKOLAIENKO quoted the SOI a price of $6,000 for the two boxes of Epclusa and $40.00 for the EMS shipping cost. In December 2018, NIKOLAIENKO provided the SOI with an invoice for the purchase of the Epclusa. The invoice number was number 463, with the billing address on the invoice listed as "Ukraine, City Kiev, pr Goloseevskiy 70, office 231." The invoice was dated December 1, 2018 and stated that the sales person was "Maksim Nenadov". The invoice detailed the quantity, providing that the shipment consisted of two boxes of Epclusa totaling 56 tablets (28 tablets per box), for a total price of $6,000, plus $40.00 for EMS shipping. The invoice also instructed the SOI to wire the money for the Epclusa to NIENADOV's bank account in the Ukraine. The banking information was the same banking information that NIENADOV provided your Affiant for all prior undercover purchases.

27. On December 6, 2018, your Affiant wire transferred $6,040 to the above bank account for the purchase of the suspected counterfeit Epclusa. In December 2018, the SOI advised NIKOLAIENKO that $6,040 was wired for the purchase of the Epclusa. The SOI instructed NIKOLAIENKO to mail the Epclusa shipment to an ICE undercover P.O. Box in The Woodlands, Texas. In December 2018, NIKOLAIENKO also provided the SOI with the EMS tracking number for the shipment (EE010385186UA). On January 16, 2019, SA Valdez received the Epclusa shipment from NIKOLAIENKO bearing tracking number EE010385186UA at the ICE undercover P.O. Box. The parcel contained two boxes of German branded Epclusa 400mg/100mg. Each box contained a bottle containing 28 tablets. The sender on the EMS waybill was Maxim NENADOV, pr. Goloseevskiy, Kiev, Ukraine 01032. On January 25, 2019, your Affiant mailed samples of the Epclusa to the respective trademark holder Gilead for analysis. On March 14, 2019, your Affiant received a laboratory report from a Gilead representative advising your Affiant that the Epclusa purchased from NIENADOV is counterfeit and violates the trademark registrations listed in paragraph nine.

28. In November 2018, at the direction of your Affiant the SOI invited NIKOLAIENKO and NIENADOV to the United States to meet his business partner (ICE UCA) and discuss further business opportunities. In December 2018, NIKOLAIENKO provided the SOI pictures of his Ukrainian passport and NIENADOV's Ukrainian passport so the SOI

7

could prepare a business visa invitation letter for NIKOLAIENKO and NIENADOV to obtain visas to travel to the United States for business. In February 2019, NIKOLAIENKO and NIENADOV agreed to travel to Houston, Texas in April 2019, to meet the SOI and his business partner and discuss future business opportunities in the United States.

29. On April 10, 2019, your Affiant was advised by a Merck representative that the wholesale acquisition cost (WAC) for one dose of Keytruda 50mg in the United States is $2,190.37. As stated in paragraph 14, NIENADOV sold the Keytruda 50mg to your affiant for $1,180 a dose. On April 10, 2019, your Affiant was advised by a Gilead representative that the WAC for one bottle (28 tablets) of Epclusa 400mg/100mg in the United States is $24,920. As stated in paragraph 26, NIKOLAIENKO sold the Epclusa 400mg/100mg to your affiant for $3,000 a bottle. On April 11, 2019, your Affiant was advised by a Celgene representative that the WAC for one dose of Abraxane 100mg in the United States is $1,378.01 a dose. As stated in paragraph 16, NIENADOV sold the Abraxane 100mg to your affiant for $400 a dose. NIENADOV and NIKOLAIENKO are selling the above referenced pharmaceuticals well below industry wholesale prices.

30. Based on my experience and the aforementioned facts and observations, I respectfully submit that there is probable cause to believe that NIKOLAIENKO and NIENADOV did intentionally and knowingly traffic in goods or services and use a counterfeit mark on or in connection with such goods or services, and traffic in labels, stickers, badges, emblems, documentation or packaging of any type or nature, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive, in violation of Title 18, United States Code, Section 2320(a)(1) and 2320(a)(2). Furthermore, there is probable cause to believe that NIKOLAIENKO and NIENADOV did intentionally and knowingly introduce misbranded drugs into interstate commerce in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

John G. Valdez
Special Agent
U.S. Immigration and Customs Enforcement

Sworn to and subscribed before me this 15th day of April 2019, at Houston, Texas and I find probable cause.

Peter Bray
United States Magistrate Judge

8

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. **H19-0649M** |
| Maksym NIENADOV | ) | |
| *Defendant* | ) | |

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* __Maksym Neinadov__,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☑ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

Title 18, United States Code, Sections 2320(a)(1) and 2320(a)(2)       Trafficking in Counterfeit Goods

Title 21, United States Code,
Sections 331(a) and 333(a)(2)                                          Misbranded Drugs

Date: __04/15/2019__

*Issuing officer's signature*

City and state: __Houston, Texas__                    __Peter Bray, Magistrate Judge__
*Printed name and title*

### Return

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

*Printed name and title*

AO 442 (Rev. 11/11) Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: Maksym NIENADOV

Known aliases: Maxim NENADOV

Last known residence: Kiev Ukraine

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth: 03/21/1984

Social Security number:

Height:                                                    Weight:

Sex: Male                                                  Race:

Hair:                                                      Eyes:

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number:

Complete description of auto:

Investigative agency and address:

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*:

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

United States of America
v.

Volodymyr NIKOLAIENKO

)
)
)
)
)
)
)

Case No. **H19-0649M**

*Defendant*

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)* Volodymyr Nikolaeinko ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☑ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

Title 18, United States Code, Sections 2320(a)(1) and 2320(a)(2)         Trafficking in Counterfeit Goods

Title 21, United States Code,
Sections 331(a) and 333(a)(2)                                            Misbranded Drugs

Date: 04/15/2019

*Issuing officer's signature*

City and state: Houston, Texas

Peter Bray, Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____. |
| Date: _____ |
| *Arresting officer's signature* |
| *Printed name and title* |

AO 442 (Rev. 11/11) Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: Volodymyr NIKOLAIENKO
Known aliases: Vladimir NIKOLAIENKO
Last known residence: Kiev, Ukraine
Prior addresses to which defendant/offender may still have ties:

Last known employment:
Last known telephone numbers:
Place of birth:
Date of birth: 01/06/1987
Social Security number:
Height: Weight:
Sex: Race:
Hair: Eyes:
Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number:
Complete description of auto:

Investigative agency and address:

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*: